Good morning. Good morning, Your Honors. Welcome to Alaska. Randall Cavanaugh on behalf of Claritza Natera. Plea agreement or not, the forfeiture of the money was rapacious and not supported by the record. The seizing of the money, which was legitimately earned by Ms. Natera, who only had a limited role in the actions of JPS, was wrong. And I get his name really well. The record, when Judge Burgess held the sentencing, he made no specific findings concerning the forfeiture of the money that's required under 21 U.S. Code 853. Before we even get to the substantive argument that you're making, I guess I'm trying to Your Honor, concerning that, when someone does come before the court for sentencing, that doesn't give the trial court carte blanche as to doing what it wants. If the court issues a ruling or does an action that is not supported by the record and does not comport with the record, I'm going to break this down a little and back up. Because it seems for your briefing, you conceded that the waiver was voluntary. Correct. Okay. So Judge Burgess went over and with this record, very carefully and repeatedly, the whole waiver that she would not be able to challenge the forfeiture on appeal. I mean, it was those pages of this and it's your waiver specifically noted at page two of the opposition to the government's motion to dismiss. So I know you're familiar with that part of the record. So it seems like she waived her ability to challenge the forfeiture on appeal. But Your Honor, that was at the change of plea. But at sentencing, the actions of Judge Burgess was, he made no findings concerning the forfeiture. We put on the evidence concerning Well, he did make findings concerning the forfeiture. He said that she would pay joint and severally, pretty clearly, he made an oral pronouncement, that she would pay the $280,000 plus joint and severally. Now, I do agree and I wanted to talk to you. There is some lack of clarity, I guess, with respect to an order of forfeiture. It looks like there was supposed to be an order of forfeiture filed. It's not clear to me when it was ever filed and I'm going to ask the government, maybe you know what happened to the order of forfeiture. The paper that was filed in the box regarding joint and several liability, but the oral pronouncement, I think, would control, would it not? Right, and nothing was filed by the court. But again, the court, and I disagree as to the clarity of Judge Burgess' remarks at sentencing. We put on the tracing evidence through the realtor, Mr. Stone, who stated she had started purchasing the residence in 2001. In the pre-sentence report, it stated how she was able to purchase the residence of where the duplex was rented out concerning where the majority of the mortgage was paid by her renter and so forth. Now, the forfeiture of the money is a big issue because she only had a two-year involvement involving with Howell. She started purchasing the residence in 2001. Now, Howell, unfortunately, after she became pregnant, she learned that he was a bad guy who was involved in drugs and a scheme to obtain tax refunds. He then refused to pay child support, didn't even want her to keep the baby, but then when she had the child, turned to her and basically said... I'm not sure, and I'm not unsympathetic to that, but I'm just trying to figure out how relevant that is to this proceeding at this point in time. She pled guilty to one count of conspiracy to commit international money laundering and clearly stated the factual basis of why she was guilty of that crime. Up to $35,000 per the plea agreement. Well, but with a clear understanding by the judge and by the prosecutor who had stated that, you know, it may be more than this and that will be determined at sentencing, and she was asked if she understood that, and she indicated that she did. If you were there... I was there. It was a very long hearing. Then you probably know better than me, but I read the record, and so it seems clear that she understood that it was possible, and so according to the law, if it was reasonably foreseeable, you know, that the proceeds, you know, coming from all of this activity, all of those proceeds could be determined to be the amount that she would be held joint and severally liable for. And so Judge Burgess made that determination. It looks like he really, once it's determined the amount of the proceeds, he has to impose that, and the question, I guess, that I have is whether it should be joint and several, and what's not clear to me, and maybe you can offer some assistance to me or to the panel on this, is was it to be joint and several with the co-defendants or with the co-conspirators, which includes, you know, the father of her child? Well, the father really didn't enter the picture at all in Asda argument, and again, I would disagree as to the findings because the government really didn't put on anything to rebut our tracing of where the funds came from. But as noted in my sentencing brief, Alberto Acosta, who was a co-defendant, he was not requested by any money by the government. His wife, Rosie Claritza Acosta, if she stayed out of her trouble for a year, her case was going to be dismissed. No money was requested, and she had done $25,000. Joel Paredes Henriquez was sentenced to 12 months and one day. The indictment indicated he did $18,000, but the government was only asking $25,000. Noreto Paredes Henriquez wasn't given any active jail time. He was only asked for $25,000. The indictment was indicated through what Dean Paredes Henriquez, they asked for $80,000, and he had passed essentially $30,000, and he had the additional $55,000 seized from him on the way to the Dominican Republic, which we vigorously contested that she had any involvement in because she refused to carry the money. She refused to sit there and get a lawyer for him and even tried to don't do it, but still Judge Burgess held him accountable. And then Ms. Concepcion Aiga. I guess the authority for that, which you must be familiar with, is U.S. v. Newman, which says when proper notice is given, the forfeiture is authorized by statute, and the district court must impose criminal forfeiture in the amount of the proceeds of the crime, and the proceeds equal the total amount of money laundered by the conspiracy as a whole. So, all of these folks were co-conspirators. And they're not being held to the same accountable as to her. The judge gets to make that determination of who's accountable and severally, and that's what he did here. I mean, isn't it? I mean, I'm trying to and I'm hoping that the court will provide some clarity on this issue. What precise issue is it? Well, one, was it proper for him to forfeit in light of the overall circumstance of Ms. Natera's, the entire amount? Is this a factual question that you're challenging now? One, I think it's a legal question because I don't think Judge Burgess adequately addressed the rebutting of the presumption under subsection D of the criminal forfeiture statute. And B, I don't think he made the factual predicate findings concerning the co-defendants. I mean, there's a clear disparity regarding how the defendants were treated in this case. And I think of the unfortunate circumstances, my client who worked, did the American dream, unfortunately got pregnant, did not give up the child like requested, and she was basically hammered greatly because of that intimate romantic involvement at one point with Howell. So, I think if the court were to issue an opinion that, gee, let's follow something like the MACB factors when it comes to criminal forfeiture, perhaps that we would come out a little bit different on a remand. And so that's what I'm asking for is to go back and have this remanded for the clarification of these issues. All right. Thank you, Counsel. You've exceeded your time. We'll give you a minute for rebuttal. Thank you. May it please the Court, my name is Timothy Edmonds on behalf of the United States. Good morning, Your Honors. Good morning. Your Honors, I believe that you all were hitting the nail on the head when you were discussing the valid waiver of appeal in this case. Ms. Natera clearly validly waived her appeal. As we know, the two requirements for a valid waiver of appeal, whether it's knowing voluntary and whether or not the expressed language of the appeal waiver encompasses the ground upon which the defendant is trying to appeal. And both of those have been met in this case. Even if it's waived, there's some issues with the judgment here or with the district court's pronouncement at the hearing, at the sentencing, with respect to the criminal forfeiture, and then the actual written judgment. Because at the hearing, he said she would be joint and severally liable, and he indicated the amount. But the judgment is silent on the issue. The box isn't checked. For joint and several? Yes. And it's not clear from the hearing or from the written judgment whether the district court intended all of the codependents to be joint and severally liable or all of the co-conspirators to be joint and severally liable. Can you shed light on that? Yes, Your Honor. So I took a look, actually, back to the record when you brought that up a couple of minutes ago, and it's with the other defendants. So it's not all the co-conspirators with the defendants. I'm sorry. It's with the other defendants, not the co-conspirators, just with the other defendants. Judge Burgess says joint and severally liable with the other defendants. So the way I read it is that he's holding her joint and severally liable with the other defendants charged in this case. The indictment lists all of the co-conspirators. That's why it's a little confusing. Yes, actually. You're right. And there are only three individuals, the appellant here as well as Joel Henriquez and Randine Henriquez who were actually convicted of the international money laundering. Those are the only other defendants here. So I think when he makes reference to the defendants, he's making reference to the other defendants that have been convicted of international money laundering, and that is Joel and Joel Henriquez as well as Randine. Where do you point to in the record to indicate that you think that supports your intent? Supplemental excerpt of record 183. What does it say there? It says, I don't have the language right in front of me, I'm sorry, but it says that the appellant will be joint and severally liable with the other defendants. Were you trial counsel for this case? I was not, Your Honor. Let me, it looks like, did the government ever submit a final order of forfeiture in this case? No, and I can explain. Let me explain that whole process. So initially, the way that it was pled, we pled a number of forfeiture allegations, two traditional ones and a money judgment allegation and a substitute asset allegation. We started moving forward with a preliminary order of forfeiture. We made a motion for a preliminary order of forfeiture. Ultimately, we decided not to pursue that. We decided to stop with that and instead go for a money judgment because we saw over the course of the case that the houses, the specific house 210 Bliss that we had initially tried, we had motioned for the preliminary order of forfeiture was not related to the offense here. And so we decided to go for a money judgment because the money that was involved in this conspiracy had been sent offshore. That was a part of the international money laundering conspiracy was that this money was sent to the Dominican Republic so we couldn't get access to it. So we proceeded under the money judgment allegation that we had set out, the forfeiture money judgment allegation. So I wanted to address this because counsel was discussing us forfeiting the house. We never forfeited the house, nor did we try to pursue that. We stopped after the preliminary order of forfeiture and pursued a money judgment. So, counsel, you said ER 183? SER 183. Oh, SER. Supplemental record. Okay. So that's why I couldn't find a judgment? I mean, because you know you were ordered to submit one? Yes. Did you go back to the district court and tell them what you had done? No, no. So we essentially made a motion for the preliminary order of forfeiture, and after that between the parties we agreed that we would no longer pursue that. We put a list penance on the home initially, 210 North Bliss, and between the parties we agreed that Ms. Notera wanted to sell her house. We no longer wanted to pursue an order of forfeiture on the house, and so we agreed that we would lift the list penance so that she could sell her property in anticipation of maybe going on a money judgment or for whatever else she would need and ultimately pursue a money judgment for the money we could not get because it had been sent offshore. So the district court was aware that the money judgment proceedings had been substituted for the forfeiture proceedings? Yes, and actually the judgment specifically states there's a money judgment for 239, 990, a forfeiture money judgment. All right, which is why we get into all the joint and several liabilities. Exactly, exactly. And then let me ask you, the individual that was caught in Philadelphia with the $50,000, that was a co-defendant? He was actually not. I'm sorry, Ms. Thede. He was a co-conspirator. I apologize. He was charged separately, but he was a part of the conspiracy. I do apologize. That's a little confusing. Yeah, I'm sorry. That's Randin? That's Randin. So within the charging document that the appellant was charged in, the only people convicted of international money laundering were the appellant herself and Joel Henriquez. Then charged separately was Randin Henriquez. He was also convicted of international money laundering for the same scheme. Well, then shouldn't she get credit for the $50,000? And she does. She is getting credit for that. Where is that? I believe the judge said that. I'm sorry. She is getting credit for that. I appreciate your work, but can you point to me in the record? In his judgment. When you say his? Randin's. I suppose it doesn't set it up there either. I mean, shouldn't it be clear in her judgment that she is credited $50,000? It should. Your Honor, I can see that it should be clear there. But I can tell you the government's expectation was never that she would pay that $55,000, and I believe it was discussed at sentencing. I could be incorrect about that, but that was never the intention. At this point, the $239.90 is what she's been held responsible for, but ultimately what we're looking for because she's getting the credit for the $55,000 is the $184,270, which is the remaining after you take away the $55,720, I believe. But there's nothing in the record to show that. Right now there's a judgment for $280,000-plus for her. $239.90? Yes, there is. And there may be something in the sentencing. I apologize. I cannot recall a specific site for that. But I can tell you that is the expectation that she would fulfill the rest of because the $239.90 represented the corpus, and so we weren't looking to double-tap her. In fact, I believe. I appreciate that, and maybe she can carry the transcript of this around, but there should be something in the record in form of a judgment to indicate that. I understand. Of course, I mean, all of these other issues we don't get to if we determine that there was a valid waiver. Yes, Your Honor. Right. Yes, Your Honor. The government's position is that's really where this case rises and falls. I mean, I believe on the substantive issue we have a good case there. But, I mean, it's difficult to argue that this wasn't a valid waiver, this isn't a forceful waiver. If this one isn't, it's difficult for me to see which one is. In fact, in a very similar case with a defendant who was Vietnamese-speaking,  and ultimately the court, this individual also tried to withdraw their plea and appeal on that ground, and the court said if a painstaking bilingual Rule 11 colloquy does not pass muster, it's difficult to imagine what colloquy would. And that's really where we are. I mean, if we invalidate this appeal waiver, really none of them stand. None of them are good because the judge, I mean, a review of the record, a cursory review of the record, makes it clear the judge went step by step. Every instance where the defendant seemed not to understand something, he explained it again. He told her the importance of her rights, the importance of the appellate right, what she was forfeiting by giving that up. She said she understood. He also explained to her with respect to forfeiture specifically that, you know, she was agreeing to forfeit about $30,000, $30,000 to $35,000, but that ultimately the government was seeking more and that she could be sentenced more harshly than she initially anticipated. I mean, he made it very clear. In fact, in speaking to that, the district court judge said, but I want to make sure that you understand that today because if I decide that it's more than $30,000, I don't want you to come back and say, well, I thought it was only $30,000, so I want out of this agreement. That's not going to happen. Do you understand? Appellant answers, okay. The court says, okay. Appellant says, I understand. I mean, that goes right to the heart of this issue. There's really nothing else that a court could do to flesh out the issues and make sure a defendant understands the waiver of their rights. And our position is if a waiver is knowing and voluntary and the language of the waiver is sufficiently broad to encompass the ground for which she appeals upon, then ultimately that appeal right is waived. So on the written judgment, the district court didn't need to check the joint and several liability box? They didn't check it. Now, my position would be, our position would be that the oral statements control. Either way, though, even if it's not held joint and several, it still weighs in the government's favor because the joint liability is what would favor her, several to her. So whether or not that's checked, still that wouldn't work in her favor for the $239.90. Only if it were checked, then there would be a greater argument to say, oh, well, these other individuals have been held jointly liable, so they, too, should have to pay. But if it's not even checked, then ultimately. At the oral hearing, he said she was joint and several. I guess my position is that it is joint and several because he made that oral pronouncement. And the oral pronouncement should control. But even if it were decided, no, the judgment is going to control. The fact that the box wasn't checked doesn't undermine the $239.90 as to her because if you're saying, oh, well, the box wasn't checked, so it wasn't jointly liable, okay, fine. She's still severally liable to her specifically. So either she's solely responsible or she's responsible with other people. Exactly. Either way, she's responsible. Either way, she's responsible. Even if she's responsible with her co-conspirators, one of which was her co-defendant, in for a penny, in for a pound, U.S. v. Newman, as you all read. I mean, if you're in the United Circuit, if you're in for a penny, you're in for a pound. And this was all foreseeable to her. The judge made a clear finding on the record during the sentencing, which was, as you saw, a very extended and long evidentiary hearing where a ton of evidence was set out. The judge made a number of findings. He made a finding of foreseeability. He ultimately made a finding that the pellant actually lied to him about her level of involvement. He also stated at one point that he felt like the pellant was more involved than he could tell but didn't think she was credible at that time. Okay, so with respect to the question of whether or not the joint and several would apply to all of the conspirators or just to these defendants, the two parties, to the defendants, that both of you seem to agree that it's just the defendants and not the fellow who's also a co-conspirator. Well, my interpretation of it is when the judge says joint and several are liable with the defendants, he's talking about the other co-defendants that were convicted of the same offense, so international money laundering, and that is Joel Henriquez. He is the other individual. Now, I stated that Henriquez, I'm sorry, Randine was also convicted of international money laundering but in a separate indictment. Thank you, counsel. You've exceeded your time. We'll hear rebuttal. Your Honors, I think it's clear that there are some questions here, and I think that the case would perhaps benefit for a remand to clarify. But to sit there and say that she's not, I think more the intent was for the co-conspirators. Not the co-conspirators, the co-defendants. Well, they were defendants with her. All of the co-conspirators? Well, the indictment lists all the individuals that were charged by the government. I think that the government did extend some very favorable deals to them, which some of them were eventually dismissed out if they were stayed out of trouble for a time period. But they were also co-defendants of Ms. Naterrez. So I think they would be covered. So what difference does it make if they're jointly and severally liable or she's liable alone? Either way, she's liable for the money judgment. True, but if she's jointly and severally liable, and if the court sits there and finds that a full amount was forfeited, she could then try to recoup some of the money from the others that were involved. So it's not a minor matter. It may be a matter of trying to use the judgment and recoup some of the money from the others. I mean, again, when you look at this, because she had the greater aspect of being involved in the community, working hard and making something of the American dream after coming from the DR, she ends up being more heavily penalized overall. But I do think a remand would be an appropriate remedy in this matter. Even if there's an appeal waiver? Yes, for the clarification on the joint and several, yes. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Murguila, Schroeder